## Louden Construction, Inc. v. Upper Dublin Township

*James E. Meneses,* for appellant.

*Elmer L. Menges,* for appellee.

HONEYMAN, J., July 22, 1966.—This is an appeal from the disapproval of plaintiff's land subdivision plan by the Board of Commissioners of Upper Dublin Township. The appeal is pursuant to section 3066, article XXX-A of the Act of June 24, 1931, P. L. 1206, as amended, 53 PS §58066(f), known as The First Class Township Code, which requires the court of quarter sessions to "hear the matter de novo, and after hearing enter a decree affirming, reversing or modifying the action of the board as may appear just in the premises".

By agreement of counsel, depositions were taken and the case was heard on briefs and oral argument before the court.

Plaintiff, its neighbors and the township have all been confronted by two problems, the first being the availability of public water, and the second the availability of public sanitary sewers. Plaintiff requests that the court order the township to approve a subdivision plan on its contention that public water and public sewers will ultimately be available. The township, on the other hand, has said and still says that the developer is entitled to an approval of a plan when it meets the requirements of the existing zoning ordinance.

### FINDINGS OF FACT

1. Plaintiff, Louden Construction, Inc., is a corporation organized and existing by virtue of the laws of the Commonwealth of Pennsylvania with its principal place of business located at Fort Washington, Pa.

2. Plaintiff is the owner of certain lands consisting

of approximately 124.2 acres located in Upper Dublin Township, Montgomery County, Pa., which land is described by deed dated September 18, 1964, and recorded in deed book 3346, page 329, in the office of the Recorder of Deeds of Montgomery County, Pa. The land is bounded by Susquehanna Road, Fort Washington Avenue and Meetinghouse Road.

3. At the time the land was purchased by plaintiff on November 7, 1963, said land was zoned "A" residential under the zoning ordinance for Upper Dublin Township, being ordinance no. 140, as amended. This ordinance required a minimum area of 20,000 square feet for lots having a water supply and sanitary sewers in "A" residential districts. Plaintiff sought to develop the land for residential homes in accordance therewith. The ordinance required greater lot areas when there was no service with sanitary sewers and public water, or either of them.

4. On February 11, 1964, the aforementioned zoning ordinance of Upper Dublin Township was amended to increase the minimum lot area from 20,000 square feet to 22,000 square feet in an "A" residential district, with a reduction of 10 percent in the event certain park and recreation areas were provided. Also required was a width at the building line of 100 feet where both sewers and public water are provided. A greater width is required if neither are present on the lot.

5. On November 10, 1964, plaintiff submitted, in accordance with the February 11, 1964, amendment, a subdivision plan prepared for it by C. Raymond Weir Associates to the board of commissioners and to the Board of Adjustment of Upper Dublin Township. The plan was subject to conditions as set forth in a letter attached to the plan, dated November 9, 1964, and signed by Louden Construction, Inc., Louis B. Glanzberg, president.

6. On December 15, 1964, plaintiff received a letter from Richard M. Brown, Jr., secretary to the Board of Commissioners of Upper Dublin Township, stating, inter alia: "The tentative subdivision plan is acceptable as far as road pattern, lot layout and park locations, but the Board's tentative approval is with the express understanding that the plan may be subject to modification when a formal preliminary plan is presented and further consideration is given to an additional road providing access to the adjoining undeveloped land. The Planning Commission may also have some recommendation which will affect the individual lots and the park areas. It should also be fully understood that a formal preliminary plan of this tract cannot be approved until both public water and a sanitary sewer system to serve this tract is available or their provision is guaranteed to the satisfaction of the Board".

7. At the time of depositions, plaintiff was denied the right to water for its properties solely because of a jurisdictional dispute between two water companies, both of whom are anxious to obtain the right to serve plaintiff's properties.

8. There are no private or public sanitary sewers adjacent to or in the near vicinity of the tract in question. The nearest existing line is located 4,700 feet from the northwest corner of plaintiff's tract, and is a line of the Upper Dublin Township Authority into which sanitary sewage is discharged and carried to the plant of the Ambler, Upper Dublin, Lower Gwynedd, Whitpain and Whitemarsh Sewage Disposal Project.

9. The use of the disposal plant is restricted to the agreed amount from the respective municipalities and by the total capacity. The township of Upper Dublin is limited to a total usage of 5,000 persons. Of that number, there is presently used and/or allocated all of the capacity available to Upper Dublin, except ap-

proximately 360 persons, or, 96 equivalent dwelling units.

10. For distribution of the sewage capacity, Upper Dublin Township was divided into districts. One of these districts, the Rose Valley Sanitary Sewer District, was allocated a use capacity of 1,585 persons and at the present time is not fully used. The Rose Valley Sanitary District is immediately adjacent to the portion of the township in which petitioner's land is located.

11. Plaintiff and other interested groups made proposals as to how they could obtain a portion of the plant's capacity. Funds were offered in order to assist the township in meeting added expenses. This offer was not accepted by the township.

12. On July 13, 1965, a further amendment to the Upper Dublin Township zoning ordinance was passed, requiring a minimum lot area of 45,000 square feet in "A" residential districts when neither sewer nor water service is available; 35,000 when either of such services are available; 26,000 when both services are available; 30,000 when serviced with water and when capped sewers are installed, with a reduction to 26,000 for lots in an approved residential development plan; and 22,000 when both services are actually and immediately available. After each change, the developer was given an additional four month period from the effective date of the ordinance in which to obtain an approved preliminary plan, provided a portion of the subdivision could be developed and covered by a recorded plan with the improvements guaranteed.

13. The township has not approved the subdivision plans submitted on numerous occasions by plaintiff.

## DISCUSSION

It appears that plaintiff's plans are able to meet all requirements except those pertaining to public utilities. Plaintiff argues that since it meets these require-

ments, it should receive a subdivision permit, and that it would take its chances in securing building permits. The township refuses to accept plaintiff's reasoning until it is guaranteed that plaintiff will acquire the required improvements (i. e., water and sewers). While it is possible that water could be made available within a reasonable time in the future, there is no such visible possibility as to sanitary sewers.

The "Planned Residential" category of zoning in the Upper Dublin Township zoning code requires the performance of approximately seven conditions, among these being (d) and (4) of ordinance 281, section PR-2: "(c) All lots shall be served by public water".

"(d) All lots shall be served by public sanitary sewers or provisions made for 'capped sewers,' when approved by the Board of Commissioners and which will be installed in conformance with the comprehensive sanitary sewer plan of the Township". With the solving of the jurisdictional dispute, plaintiff would be able to comply with the conditions of paragraph (c), but he cannot meet the requirements of paragraph (d), which is under the sole control of defendant township. The above two paragraphs are clearly intended to protect the health and welfare of the community, which are properly subjects for township regulation.

In a case similar to the one under consideration, Myers v. Fritz, 65 Montg. 25 (1948), this court considered an action of mandamus brought by property owners against the commissioners of Upper Moreland Township to compel it to construct sanitary sewers to serve their respective properties. The matter came before this court on preliminary objections to the complaint in mandamus, "alleging that all of the relief sought by the plaintiff involves judgment and discretion and that mandamus lies only to compel the performance of purely ministerial functions". The court

sustained the preliminary objections on the theory that "where the statute imposing upon the officer the duty sought to be coerced is couched in permissive terms, this confers upon him a discretionary power as to the performance of the act and does not impose upon him a clear legal duty to act".

The statutory law still grants to the commissioners of first class townships the power, rather than the obligation, to establish and construct a system of sewers and drainage. Once constructed, the sewer system is under the control of the township to be used in the most beneficial manner for the community. Since this is true, the above case law would control, and this court has no authority to direct the commissioners of Upper Dublin Township to approve a plan where a subdivision without sewers could be detrimental to the health and welfare of the community.

Plaintiff argues that the present factual situation is similar to the one in Wanamaker v. Whitemarsh Township, 23 D. & C. 2d 544, 77 Montg. 58 (1960). That case involved a second class township's refusal to approve a subdivision plan after it had adopted an amendatory ordinance which up-zoned petitioner's ground. The court upheld petitioner's contention that the refusal was arbitrary, unreasonable and unconstitutional. There, the court held that the township supervisors in their executive capacity could not deliberately and purposefully withhold approval or disapproval of a subdivision plan until they had time in their legislative capacity to enact changes in the regulations relating to the subdivision plan. The present factual situation is clearly different. Here, the commissioners have a limit as to the sewage service which can be allocated to the residents of the township. This court cannot find as a fact herein that to withhold sewage service from plaintiff was arbitrary, unreasonable and unconstitutional.

Plaintiff tried to show that the facilities of sanitary sewers are available to its land as well as to other tracts. The unallocated capacity in the new Ambler plant is for about 96 equivalent dwelling units. The feasibility study marked as exhibit P-3 states at pages 7-8: ". . . This is considerably short of the requirements of the four properties under consideration herein. The multi-party agreement covering the Ambler Joint Sewage Treatment Plant has provisions covering plant expansion and possible revision of allocated capacity with commensurate compensation; these are areas for discussion with the local municipal government". The above language is followed by the following conclusion: ". . . The critical question is that of treatment plant capacity if full participation of all four parties hereto is contemplated; this question will have to be resolved through the Board of Commissioners of Upper Dublin".

The testimony shows cooperation on the part of the township to secure additional capacity in the new Ambler plant, even to the extent of borrowing on a temporary basis from the other municipalities enjoying the rights and obligations of the new Ambler plant. To the present time, Upper Dublin Township has not been able to secure, either on a temporary basis or a permanent basis, any additional capacity in the new Ambler plant.

No cases have been cited saying that it is an abuse of discretion for a township to decide that one area is in greater need of sewers than another unless facts showing this abuse of discretion are presented. The township commissioners are charged with protecting the interests of an entire township and, at times, in performing their duties, one group may be inconvenienced while another one receives advantages. This is one of the many problems facing the commissioners, and certainly is considered in their decision. This

court cannot say that the decision of the Upper Dublin Township Commissioners was not in the best interests of all residents of the township.

Plaintiff complains about the adopting of the ordinance after its plans were announced in 1964. This court has held on a number of occasions that the approval of a plan without the issuance of a permit does not protect a developer against a change in the zoning requirements: Kessler v. Zoning Board of Adjustment, 24 D. & C. 2d 418, 78 Montg. 151 (1960) ; Roncase Appeal, 71 Montg. 362 (1955) ; and Elkins-Rydal Company v. Brigham, 84 D. & C. 136, 69 Montg. 185 (1952). This is especially true when the township provided a four month grace period after adopting a new ordinance. In this period, a qualifying plan under the old ordinance could have been adopted. It is to be presumed that plaintiff was cognizant of the fact that the zoning requirements for its property could be changed at any time and cannot now complain to this court that the commissioners are not giving it what it desires to secure. The disapproval of plaintiff's subdivision plan does not prevent the utilization of the tract in question. Plaintiff can choose either to wait for the problems attendant upon the obtaining of water and sewer service to be resolved, or it can revamp its plans for development so as to provide the larger lot areas as demanded by the present zoning ordinance.

### CONCLUSIONS OF LAW

1. The court has jurisdiction over the parties and the issues raised.

2. The various plans of subdivision filed by petitioner with Upper Dublin Township complied with the existing zoning ordinance in all respects except the requirement for the provision of public sanitary sewers and public water.

3. The various plans were either refused or not acted upon for the above reason.

4. The subdivision plan was properly and justifiably refused by the commissioners.

## DECREE NISI

And now, July 22, 1966, it is ordered, adjudged and decreed that the refusal to approve the plan of subdivision by the township is affirmed; plaintiff shall pay the costs of this appeal, and the clerk of courts shall give prompt notice of this adjudication and decree nisi to the parties, who may file exceptions within 20 days after notice. If no exceptions are filed, the decree nisi shall be entered as the final decree.